May it please the court, I'm Dave Domina. I'm here on behalf of Jerry McGuire who initiated this case in the United States Bankruptcy Court for the District of Arizona. When the Ninth Circuit heard the appeals that followed to that filing and the trial in Arizona, it concluded that the Bankruptcy Court had subject matter jurisdiction of this case but should have referred this takings claim to the Court of Federal Claims. The case was sent there. It was retried there. It's now before you. Since the Government has raised ripeness and ripeness is a jurisdictional issue, I'll address that issue first briefly. The Ninth Circuit decided the ripeness issue. It concluded that Mr. McGuire had exhausted his administrative remedies even though he did not fill out a Government form requesting permission to build the bridge. He was informed of the BIA regulations that require that you, a permit to build the bridge. He absolutely was. Why didn't he apply for a permit? Our position categorically is that he did. There was no form. He did meet with the designated... Could he put anything in writing? Yes, Your Honor. He wrote a sketch of what he wanted to build and he handed it to the BIA engineer and said, this is what I want to build. After that time, he was told on various occasions that he needed to submit in writing a request and also the plans for the bridge that he planned to repair and build. But he didn't do that. I believe it's true that he had at least one notification after at least some of the meetings with the engineer. Your Honor, the record is not clear about the sequence of the meetings with the engineer, so I can't be categorical at saying that after the submission of the sketch there was a communication. There were six to twenty meetings with the engineer according to the engineer's testimony. We don't know at which of those the sketch was handed in. But we do know this... The sketch is also not in the record, right? The sketch does not exist. Do you know when he reportedly handed in the sketch? No, I do not. I cannot tell you at which of those six to twenty meetings it occurred. No one could. What I can tell you, Your Honor, is that during the period of time when Mr. McGuire was frantically trying to exhaust his administrative remedies, by finding administrative success, he met with the superintendent of the BIA who told him, meet with the engineer. But administrative remedies aren't exhausted until the government acts on it. I mean, he submitted the drawing and then he was sitting there waiting for the government to come back with either an acceptance or a rejection of that. And the government never acted on it. But is that really the case? Is that really that you submit a... one submits a drawing and they reasonably believe that the government is going to take a drawing and issue some official yes, no, maybe, or whatever, a response to that? Is that in the nature of the way we all understand the government operates? Your Honor, I must answer that this way. In this city, the answer to that question might be no. But in Parker, Arizona, the United States government consisted of one office in one building with one superintendent and a half dozen employees. And the answer is yes. There was no government form. There was no government procedure. I mean, you're correct. At the time, there was no government form. But there was a regulation, 171.9, to which he was repeatedly referred. And that regulation says, you want a permit, you've got to submit plans, and the plans have to be approved, right? Yes, sir. So the question is, did he submit sufficient plans to entitle him to an approval? The problem is, we don't know what this handwritten sketch looked like or whether it was adequate under the regulation to be a submission of the required plans, correct? I think we do know, Your Honor, from two sources, both in the oral testimony, one from Mr. McGuire and one from the engineer, Mr. Hinkins, each said that the bridge to be built, which was discussed, Mr. Hinkins could not recall the drawing and could not either admit or deny its existence. But each said that the bridge discussed was identical by specific description and agreed upon description to the two bridge styles used the entire length of this canal system. Okay, could you show me where that is? Because I read the Hinkin testimony as saying that the plan he submitted was not sufficient, was not adequate. Well, I think Mr. Hinkins did say that, but he also, Your Honor, as I recall it, in cross-examination, and I can't give you a page reference, I apologize, cross-examination's not too long, as I recall it, pretty specifically, Mr. Hinkins said that it was a culvert design with a concrete facing on the upstream side. It's very interesting that you recall it that way, but the problem is we've got to deal with the hard record. Yes, yes, we do. I don't remember that testimony being cited in the brief. I think it's cited in the brief, and while I cover some of my other points, I think I can look for it. I can tell you that in paragraph 21 on page 12 of our brief, Mr. Hinkins is discussed in detail. He acknowledged what his purpose was, and he acknowledged that there was no permit system. Paragraph 21, what page? Page 12 of our brief, and my citations there are to pages A181 through 184 of the appendix. I can only represent the accuracy of those from what is in the brief. I do not have an ability to do it from further recall. Well, maybe you can do it while we're waiting for your reply time. I'm not going to ask you to go through it now. I am able to say, Your Honor, and I will look for that and hope I can help you with a specific admission, but I do not believe there's a denial, and I think that's important, too. Wouldn't the fact that the government kept saying, you haven't given me enough, isn't that a denial? A denial of the sufficiency, Your Honor? The sufficiency of what he was submitting, the sketch or the verbal meetings he had, and in his view, I guess, from what I can tell, and based on your arguments in Arizona, yeah, you do this through face-to-face meetings, but isn't the fact, or as the record suggests, that the government never did respond to his sketches or the meetings, isn't that itself a denial, telling them, no, you're denied? Your Honor, we think that is clear proof of a denial of his application, but not clear proof of a denial of the sufficiency of his application. For ripeness, what's the difference? I mean, it's a final governmental action. The difference for ripeness purposes is this. If the citizen submits an inadequate, an insufficient, an incomplete application, and the government can't act on it, then the citizen hasn't exhausted the administrative remedy by doing all that's required. But if that submission, no matter how informal, is adequate for those purposes, then inaction by the government is a substantive denial. I think what Judge Rennan is suggesting is you said that this, you don't know exactly when this submission took place, but it was before this November 12, 1999 letter. And that letter states that basically you haven't given us sufficient information to constitute an application for a permit. So why isn't that a ruling that whatever was submitted was not sufficient? Well, Your Honor, for two or three reasons, I think. The first of those reasons is that that action wasn't local, it was distant. I believe the court is referring to the decision on appeal. The second reason that I would offer is there is no local action of any kind affirming or denying, none. The record is void of the superintendent of the BIA agency in Parker ever acting. Who's Ann Spetsch? He's the one who wrote it. I'm sorry, I didn't mean to interrupt you. Go ahead. He's the superintendent at Parker, the local senior official. Well, he's the one who wrote the November 12 letter. Are you referring to PX 21? I don't have the... I'm sorry. Yes, well, I think it's PX 24. 24, all right. He is the author of the November 12 letter. And if I recall PX 24 correctly, and I'll check it, what he says in PX 24 is, he announces when the bridge will be closed. He says it's going to happen in the future. He describes what must be done in the future. This letter is well in advance of taking the bridge out. We again encourage you to apply for a permit. Yes, this is his second notification, Your Honor, but the bridge didn't come out until 2000. I don't know, but if in fact the sketch was supplied before this November 12 letter, as Judge Rayner was suggesting, why isn't this November 12 letter a notification to him that what he submitted wasn't sufficient? Because it doesn't say anything about the submission? Well, look at the last sentence there in that same letter. It says, should you be dissatisfied with this decision, it's a decision, the government's telling them, you may file in U.S. District Court. Isn't that final action? Your Honor, that's the decision to close the bridge. The immediate preceding paragraph says, in the interim, we will close the bridge. This is not an action on a submission. There's no evidence in the record that the engineer and the citizen had even met by the date of this letter. This letter does not, I believe, respectfully fulfill that purpose. So suppose we were to disagree, and we'd say that this letter is a rejection of the submission, and it's stating that you haven't done enough yet to comply with the regulation, which is cited in here, and that, therefore, you haven't applied for a permit. What are we to make of that? Nothing. Nothing? Yes, and I'll explain why. There was no permit form. There was no way for the citizen to do anything else. But I agree there's no form, but there's a regulation that says you've got to submit plans and get the plans approved. So that seems to be the context in which everyone was working. You've got to submit plans. You've got to approve the plans. The question is, did he submit plans sufficient to constitute an application? No? Well, Your Honor, I think it's correct. The logical construct of the court is correct, but I don't think it's consistent with the facts. And the reason I don't think it's consistent with the facts is this. Number one, it starts from a moment in time that's inconsistent with the actual events. The meetings with the engineer occurred after this date. Number two, the night. I thought you said that the meeting took place before this letter. No, I did not. I said before I wasn't certain about the dates. So how do I know that the meeting took place after the letter? Because this is the date that gives firm, final, fixed, and absolute notification that the bridge is coming out. So this is the letter that advises that something else has to be built so that conversations occurred after Mr. McGuire had a firm, fixed, final decision. How do we know that? From the testimony in the record and from reading this letter and from the events which followed, including Mr. McGuire's commencement of suit in tribal court, Mr. McGuire's administrative appeal, Mr. McGuire's repeated admitted meetings with the engineer, and most importantly, the decision of the Ninth Circuit that the case was ripe and that McGuire did submit the drawing, which was adequate. So in order to overcome that under the Christensen v. Cold Industries case, this court would have to find that the Ninth Circuit's adjudication was so fundamentally wrong that a manifest injustice would be affected. But you have said previously on questions where a circuit speaks, if a party who lost got one good bite at the apple, that's the only bite they get. Every time we've appeared in court, the government has argued ripeness. And it's a good issue for them because of the nature of the operations at Parker and their informality. But it ceased to be a good issue when the Ninth Circuit decided it adversely to them. And when the Ninth Circuit made that decision... This is a suit for money. It belongs in the Court of Federal Claims. Why does the Ninth Circuit have the authority to go on and do anything else when our predecessor court, the Court of Claims, has said that when a court lacks jurisdiction, it shouldn't go on to decide other issues? Your Honor, the Ninth Circuit, as I read its opinion, did not decide that it lacked subject matter jurisdiction. It decided the bankruptcy court had that jurisdiction, but that the case was properly transferred, jurisdictional having been found, to the Court of Federal Claims for trial. The Ninth Circuit had a fixed and interesting issue. Which comes first, the question of jurisdiction or the question of transfer? And I believe it concluded quite clearly that the case was properly filed in the bankruptcy court which should have transferred it. So it found jurisdiction, I think. As to the issue of the takings, I think the Ninth Circuit said that this case belongs in the Court of Federal Claims. It definitely did, Your Honor, but I think it's fair and I think it's accurate to read its opinion to say that the filing could have occurred either place, but the trial should occur in the Court of Federal Claims. That's how we saved the case. Had it not been that way, by the time the Ninth Circuit ruled, the statute of limitations would have long since applied. I mean, sorry, expired. I think that's what it did. I think given the subject matter and given the amount involved that the claim belonged in the Court of Federal Claims, I have no contest about that to offer you except to say that the lawyer who did file the case which is a part of a Chapter 11 bankruptcy plan, filed it in bankruptcy court, and by the time I was dealing with the issues, I was dealing with the case from there, and the Ninth Circuit agreed it properly started there. I mean, at page 910 of the Ninth Circuit decision, it says, the doctrine of sovereign immunity bars the district court and bankruptcy court from hearing the merits of the takings claim. It didn't have jurisdiction over it. It says it bars hearing it, Your Honor, but it also finds it was properly docketed for transfer there. And so the Ninth Circuit's opinion can be read either of these ways. Either it decided that transfer precedes jurisdiction or that jurisdiction precedes transfer. In order to transfer the case, did the Ninth Circuit first have to resolve the rightness issue? It thought it did. What do you think? I do not think it had to, but I do think that it did, and since it did make the decision, I do not think there's a distinction between dicta and a holding that is significant for you. I think it could have said, Your Honor, and I understand this would not be my preferred position, but I think it's accurate to say that the Ninth Circuit could have concluded that transfer precedes jurisdiction. But if they lack subject matter jurisdiction, let's just assume that we read the Ninth Circuit decision the same way. Because this is a monetary claim against the government, waiver of sovereign immunity, the District Court and the Bankruptcy Court lack subject matter jurisdiction over this suit, and therefore we're going to transfer it. What basis would they have for going on and then deciding the issue or one of the issues which seems to be committed to the Court of Federal Claims, and that is the question of rightness. The Ninth Circuit believed, Your Honor, that it should not transfer a case here that was not right, and it believed it should not do that because I believe it perceived rightness, that is jurisdiction, as preceding transfer. I was asked if I think it had to make that decision. I said no. I think that's the decision that it did make, and that's how I think we got here. So I've exhausted some of my rebuttal time, I think, if I understand the clock, but that's all right. To review the merits, I mean what was appealed to the Ninth Circuit were two issues, rightness and the merits of the case. True. In order to review the merits, did it not have to resolve the jurisdictional issue of rightness? Yes, it had to do that. Well, isn't that what they had to do? I mean you said no a while ago.  Right, they did review the merits, but they did say that this case is ripe and then transferred it over to me. My enormous urge is to agree with the thrust of your question. I think that's the preferred policy. Having spent a long time and a long and very interesting oral argument with the Ninth Circuit, I think what was going on in that panel's minds was a question about which comes first, jurisdiction or transfer. I think it decided we should resolve the jurisdiction issue before we burden one of our sibling circuits with a case it does not otherwise need. So I think it did in fact decide jurisdiction first. And I think it made the right choice between two available choices. So at least in the Ninth Circuit's mind, they had to resolve the rightness issue before, so how can that be dicta? If that's true, then how can the rightness decision be dicta? I disagree with the government about it being dicta, but I also see no significant distinction because it made a decision on this threshold issue. Well, if it says they're doing it for their view of judicial economy and courtesy, then that more than suggests, does it not, that it's not something they were required to do technically before transferring the case. Well, it's pregnant with that suggestion, but it doesn't change the test under Christensen versus Colt, which requires that for you to disagree with the Ninth Circuit, you must find manifest injustice. No, but I think that Christensen's dealing with a situation in which there's the jurisdictional issue as to which court the case had to be filed in has already been decided. That's not the situation. Rightness has nothing to do with the question of whether the suit should have been filed in district court or the Court of Federal Claims. It was reaching out and doing a, quote, courtesy to the Court of Federal Claims in deciding an issue which should have been decided not by the court that lacked subject matter jurisdiction, but by the Court of Federal Claims. That's the problem. I appreciate your perspective, Your Honor. I disagree about what Christensen holds. I think Christensen is a decision by the Supreme Court that focuses fundamentally on how to make the circuit courts operate most efficiently. And I think it stands for this simple proposition. If one circuit decides, another circuit is bound unless... Any question? Any question except in those rare circumstances where it becomes obvious after the First Circuit speaks that to follow that conclusion would result in a manifest injustice. Suppose the Ninth Circuit had decided the issue that the Court of Federal Claims did. So there's a courtesy to the Court of Federal Claims. We're going to decide that there's no property interest here. And so you won't have to worry about it in the Court of Federal Claims. We would be finished. We would have been defeated, and the case would have ended on that finding. So we'd be bound by that. Well, we would be. That decision finding no property right would have defeated... So they can go ahead and decide the merits of the case? Well, Your Honor, I... Where does the authority to decide the merits of the case come from? I think that if the circuit, the Ninth Circuit, had decided that we had no property right, the case would have ended on that finding. So we'd have to pay attention. If you had then – they nonetheless had transferred. You're saying you would have been bound by the finding of no property interest. Well, I see. I didn't follow your hypothetical far enough because in my mind I was seeing that finding and then an affirmation for a different reason than the district court. If I also assumed that they transferred and subsequently found no property right, I can't imagine why they would do that. Number one, I would assume... It's a courtesy. Safe talk for the Court of Federal Claims. There would be nothing left to try. They would have negated a fundamental aspect of the taking. Would they have authority to decide the property interest question? Probably not. But I think nonetheless it would be... The difference between rightness and the jurisdiction of the property. I think that in that context, Your Honor, the doctrine of the law of the case would have defeated us. I do not think it would have been a rightness decision. We would have been defeated by the doctrine of the law of the case. And there is a distinction between those two doctrines. I think here fundamentally the problem... I thought you were saying they didn't have the authority to decide the property interest question. Your Honor, I do concede that they don't have the authority. But if they exceeded their authority and decided it... We'd still be bound by it? I think my client would be bound by the doctrine of the law of the case. An essential element of our claim would have been defeated, and the question would never reach you. I understand what you're saying. All right. We'll give you three minutes for rebuttal. Thank you very much. Ms. Hanson-Young? Good morning. May it please the Court? My name is Jacqueline Hanson-Young, and I represent the United States. With me at counsel's table is Jessica Held, who is the trial attorney in this case. I'd like to make a couple of points and first address some of the issues that were raised just now about rightness. Let me ask you as a threshold matter. If we find this case isn't right, does that mean he can go back and ask for a permit? I mean, if there was never any final agency action, are there time limits associated with him going in and asking for a permit under the regulations? Well, at this stage, he no longer holds the lease, so he would not actually be able to go back and ask for a permit to... Do the regulations require that you have to be a leaseholder to seek a permit? Well, he – I mean, I suppose he – well, first of all, there's already a bridge that has been built because... Well, that's the practical matter. I'm talking about his legal rights to pursue a claim. That would be correct. I mean, in your typical rightness case involving a permit application, there would be a requirement for the plaintiff to go back and apply for a permit before the plaintiff could bring a taking of claim. And that's because the agency has to... Are permit requests limited to people who are less easy? That's not – the regulations are not actually so limited. He could conceivably apply for a permit, but there's no practical reason why he would want to do that. The regulations don't limit who could apply for a permit to construct a bridge on any given – or over any given canal. He could actually do that. But again, there would be no reason for him to do so because he doesn't hold the lease to that property anymore, and the subsequent tenant who took over the lease did, in fact, apply for a permit to build a bridge over the 8th Avenue crossing and did, in fact, build that bridge, and he's been farming using that bridge. I wanted to go back to some of the points that were made about rightness. Let me ask you something on the law of the case. Under that doctrine, to what extent are we bound to defer to the rightness decision of the Ninth Circuit? And if there is no deference and we review that, what's the standard review of us reviewing the Ninth Circuit decision? Well, this Court would not need to review – to answer your first question, first, there is no deference owed to the Ninth Circuit's decision on rightness. First of all, that decision was dicta. It was not necessary for the transfer decision. Secondly, even if this Court assumed that or treated it as law of the case, it wouldn't be binding under Christensen because Christensen just says that law of the case as far as transferring decisions should be reviewed deferentially, but they're not binding. So this Court could and indeed should revisit the issue of rightness. Now, under a case, for example, Texas America v. Oil Corp., this is a Federal Circuit case, where we applied a plausibility framework to find that the Fifth Circuit's jurisdictional ruling was law of the case. Would we apply a plausibility standard in order to determine whether the Ninth Circuit was correct in its determination of rightness? The plausibility standard applies to the Court's decision to transfer the case. So as in the Christensen case, the Supreme Court said that the accepting court should accept the transferring court's jurisdictional findings if they are plausible, and therefore accepted the transferred case. But that if plausible standard only applies to the transfer decision. But here the Ninth Circuit believes that its decision on rightness was essential to transferring the case. If we agree that it's essential to transferring the case and not dicta, then would we apply a plausibility framework or standard to that decision? If this Court finds that the Ninth Circuit's decision on rightness was essential to transferring the case, then the standard of whether to accept the Ninth Circuit's decision on rightness would be whether or not the decision was clearly wrong. And as discussed in our brief, that decision on rightness is clearly wrong under this Court's precedent. Is the government's view that it was essential for the Ninth Circuit to decide? No, it's not the government's view. The government's view is that it was not essential, and indeed, as you pointed out, the Ninth Circuit indicated that it was reaching the rightness issue as a matter of courtesy and in the interest of judicial economy. The only question that was necessary for the Ninth Circuit to decide to transfer the case was whether the case could have been brought in the CFC in the first instance. And the Ninth Circuit reached that decision when it decided that under the Tucker Act, the case could have been brought and should have been brought in the CFC in the first instance. The Ninth Circuit should have stopped at that point and not reached the rightness issue. But the government's view is not that they didn't have the authority to do it. For example, what if they had gone your way on the rightness question? What if they had thrown the case out on rightness? This is the Ninth Circuit. Would the government say that decision doesn't matter? You still better transfer it because you have no authority to decide that? What would be the government's view on that? Well, in that case, the government's position would be that the court found it wasn't in the interest of justice to transfer the case because there was no reason to. There was no other reason to transfer the case. So it would fit under the statutory prong of in the interest of justice. Well, you see, that causes you some problems because if the Ninth Circuit, under the rubric of interest of justice, can go ahead and decide the rightness question for you, it can decide it against you as well. I mean, I would have thought that your answer is that the question of transfer depends entirely on where the case should have been brought in the first instance and that the merits of the case, including a rightness determination, are for the Court of Federal Claims and not for the Ninth Circuit. Well, that is the government's position, that it should not have reached the issue one way or another, really, in that instance. I think, again, it would be a different position if the Ninth Circuit had found that the case was not ripe and therefore a transfer wasn't warranted. I mean, in that situation, presumably McGuire could have brought a claim in the CFC and re-argued the ripeness issue before the CFC. I'm not aware of any cases that have suggested that the interest of justice prong of the transfer statute is transferring court the authority to address what otherwise would normally be merits questions in the case. That is correct, and that is the government's position as well, that the Ninth Circuit here did not have the authority to make a ruling on ripeness, and even to the extent that it did, accepting that it did, that ruling would then be dicta because it wasn't a necessary part of the decision to transfer the case. So ultimately, is it your argument that the Court of Federal Claims was also wrong on the ripeness issue? Well, actually, if you look at the Court of Federal Claims' decision, I mean, yes, we are appealing that ruling. Let's go back to Judge Crow's question. If the case isn't ripe, where does that leave Mr. McGuire? It leaves Mr. McGuire with no claim, because he could have applied for a permit. He could have written BIA a letter saying, I don't know exactly what you want me to do. I mean, suppose we were to find that he didn't have to do that, or that that was sufficient. Not we, but I mean, now you're talking about the merits. Where would he bring those type of allegations? Well, he would have, before he brought his takings claim, he would have needed to apply for a permit in order to ripen his takings claim. And he didn't do that. So if it's not ripe, can he go back and apply for a claim now? At this stage, practically no, because he doesn't have an interest in leasing, in farming the northern portion of his lease anymore. And so he wouldn't need to apply for a permit.  If he still held the lease, yes, he could apply for a permit and cure the ripeness issue. And this question of whether he needed to apply for a permit or not is important, because only when he applies for a permit can this court know what the scope of his property interests were that were allegedly taken. Here, the agency did not have an opportunity to tell Mr. McGuire that he could or could not build any given bridge over 8th Avenue to connect the portions of... I'm kind of baffled. I mean, you're discussing the merits, but now I'm a little bit baffled on the ripeness issue, because your argument is that the case is not ripe. The Ninth Circuit was wrong.  And if we say that the case is not ripe, then that leaves Mr. McGuire without any recourse whatsoever. This court, I mean, I do understand why you're mentioning that it seems to be blurring into the merits, but this court has framed the issue of whether a plaintiff has applied for a permit as a ripeness jurisdictional decision. So in some ways, it does bleed into the merits, because he would not have a claim, because he didn't apply for a permit and now practically wouldn't be able to do so. But this court's precedents frame the ripeness issue as a jurisdictional requirement. And whether a claim is ripe is dependent on whether a plaintiff has sufficiently exhausted the administrative process and done every... Can you turn to PX24, which is the document that I think Judge Reyna earlier had your friend take a look at, the November 12th letter? It's the November 12th letter, yes, and I'm glad you... What do you make of the final provision of that, which I think Judge Reyna called out earlier, which tells these guys if they're dissatisfied, they can go to district court? Sounds pretty final to me, right? They know this is happening. As Mr. Domina said, that final decision refers to BIA's decision to close and remove the bridge, which Mr. McGuire could have challenged as final agency action under the APA in district court. He did not do that. So you understand his claim to be what, then? If it's not the claim that the government... If he isn't complaining that the government closed the bridge, then what is he complaining about, that the government didn't let him rebuild it? Is that his regulatory taking? That's correct, yes. The government understands Mr. McGuire's claim to be that he had a right to use the bridge and or repair or replace the bridge, and that the government denied him his rights when the government removed it. If you acknowledge that a portion of his claim, at least, is to use the bridge, why isn't this decision referred to in the final paragraph of the November 12, 1999 letter dispose of that? He claims that he has the right to use the bridge, and the government is now telling him, uh-uh, we're getting rid of this bridge. Done. Over. Go to district court. Why isn't that aspect of his claim at least final? The government informed Mr. McGuire that he had to... If he wanted to have a bridge there, he needed to apply... He's not challenging the tearing down of the bridge. Well, before this court, he's not. So, I mean, that is an easy answer. But secondly, the government did inform Mr. McGuire that the bridge was illegal. It was not ever permitted. It wasn't supposed to be there. And that if he wanted to have continued access to a bridge there, he needed to apply for a permit in order to construct or repair a new bridge. He didn't ever do that. And how could this letter have been a final decision on the permit when the second paragraph says, we again encourage you to apply for a permit? It was not a final decision on the permit, and indeed, it clarifies that he never submitted a permit, and the record reflects that after this letter was sent to Mr. McGuire, he never either contacted or wrote at all to BIA asking for clarification. But the medalist, he thought he had taken enough action. I grew up back west, and farmers are pretty independent and fierce individuals, and maybe he thought, I'm not going to do it. I've already done everything I'm supposed to do, and the way we do things down here, and you're telling me I've got to do this again or go to court? I'm going to go to court. Well, Mr. McGuire actually testified at trial that he did not believe he had a permit application pending with BIA, and that testimony is available at A141. So if this guy is asked to submit a permit, we all acknowledge the government agrees there was no actual form for applying for a permit in existence, right? That's correct. So what does that mean? I mean, why couldn't he not recently have thought that cumulatively all of these discussions he was having, all of this interest he had shown, the plan he had put together, his submission of that and his discussions to the agency officials was sufficient? He was informed three times over a 10-month period that he needed to submit an application in accordance with the regulations, and a copy of those regulations were provided to him in the letters. The regulations said that he needed to submit a plan for approval by the officer in charge of the project. And he submitted some sort of drawing or whatever to the agency, right? Why would a reasonable person have not assumed that that was sufficient? At an informal meeting, he may or may not have made a sketch of a permit, of a bridge. We put him in a position of knowing whether or not a meeting is formal or informal. Sure. But even the person that he met with, Hinkins, testified that what he provided to Hinkins was not sufficient in order to be able to issue a permit on. Isn't that a final decision? No, that's not a final decision. And if Your Honor considers this court's precedent in the Heck case, which is cited in our brief, and as Mr. McGuire's counsel stated earlier, if an agency informs a plaintiff that their application is incomplete, that does not make the plaintiff's claim ripe. In other words, the plaintiff has to go back and resubmit an application. That is considered complete. So in this situation, McGuire was informed that his application was not sufficient. It didn't even count as an application for a permit. And he was informed by numerous letters from the BIA over that time period. And let's also remember, it's not as though Mr. McGuire was a poor, unsuspecting, or unknowledgeable individual. He knew enough to hire a lawyer to bring a claim in tribal court to try to prevent the bridge from being removed. If he was able to hire a lawyer to help him figure out how to bring a claim in tribal court, he could have also asked that lawyer to help him figure out how to file a permit application. He said in this page that you just cited, he was asked, and did you submit any other plans to the BIA in writing after receipt of the November 1999 letter? And he said no. So he didn't, I guess this establishes that he didn't submit any further plans after this letter encouraging him to do something else, right? Right, that's exactly right. And if you look at page 190 of the transcript in the upper left-hand corner, the question that the trial attorney asks him, is it true that after the August letter that you believed you had a permit application pending with the BIA? And he answers no. So he did not even think he had a permit application pending. In this course, recent precedent in the age… Could that be because he thought a final decision had been made? I mean, when we go back and look at the November 12th letter, it's encouraging him to apply again, and it talks about the unsafe bridge. Then it goes on to say that if you disagree or you're dissatisfied, if you're unhappy, if you don't like this decision, it says you may file in U.S. District Court. Isn't that telling him this is final? We're not going to do anything else, and if you're not happy with this, then go sue us. Respectfully, I don't think that a reasonable person would think that he had exhausted all his remedies after he's receiving letters telling him that he needs to apply for a permit. I would also draw your attention to… Including this letter. I'm sorry, what? Including this letter. Including this letter, right. And if you look at A66… So your position is that the decision referred to in the fourth paragraph and final paragraph of that letter is simply the decision of this letter, which is advising him that it says you are formally notified that the bridge is unsafe and we're going to tear it down. That's correct. So the decision with respect to this letter is not a decision about whether or not to approve or not approve, disapprove a permit… That's correct. …but to tear the bridge that's coming down. And as you pointed out, that's not part of his claim, right? Right, that's correct. And I would also draw the Court's attention to page A66 in the appendix, which is the CFC's ruling on the motion to dismiss. And there the CFC actually wrote that McGuire could have done more, and the CFC goes and explains what McGuire could have done. And specifically the CFC says, McGuire could have done more to obtain permission for a new bridge. He could have, for instance, submitted a permit application, as the tenant after him did, or he could have more actively pursued the informal process the BIA used. So there is… Now, this wasn't a formal, factual finding, and the CFC ended up adopting the decision of the Ninth Circuit, but the CFC, after reviewing all the evidence, found that McGuire could have done more in order to comply with… Well, I don't see how that necessarily helps you. If one of the alternatives they were suggesting that arguably could have satisfied the exhaustion of administrative remedies is actively pursuing the informal process, then I think that emboldens Mr. McGuire to be making the argument about how he was following the right process, which was actively pursuing the informal process. So I'm not sure I understand. You're not suggesting that actively pursuing an informal process is sufficient to satisfy the need to have filed the permit, are you? No, and what I mean by that is that he could have written a letter, because at the time there was no form for him to apply on. So he could have written to BIA and said, here's my plan, and not used a form that the BIA hadn't made at the time. But by informal I mean he could have written more letters, he could have submitted some kind of plan, something in writing. Where is there a requirement he had to have a letter? Well, that would have been one way of him… Why not a meeting, a face-to-face meeting with a local individual in charge and handing him a schematic, even if it's drawn on a napkin, and say, this is my plan? That might have satisfied the regulations requirement that a plan be submitted, but the fact is there was no plan that was in the record that Mr. McGuire gave. And as Hinkins testified, the sort of sketch on the napkin that may have been made during a meeting was not sufficient to give Hinkins, who was the engineer, an idea of what kind of bridge McGuire wanted to install. And so that would not have been enough, even under this informal process, without submitting a letter in writing explaining what he wanted to do. The sketch on the back of a napkin would not have been enough. So that could have been a denial? No, again… You've given me something, it's not enough. The answer is no, unless you give me something else. That wouldn't be a denial sufficient to ripen McGuire's claim. That would simply be the agency informing Mr. McGuire that he hadn't properly applied for a permit and that he needed to actually submit a complete application. I… I think… Yeah, I know that I'm… We're out of time. Thank you very much. Thank you. Thank you. Mr. Dunlap, you have three minutes. May it please the Court. Mr. McGuire's testimony about submitting that drawing is on pages 111 through 113 of the appendix. Page 141 of the appendix was referred to by counsel a few minutes ago and she looked on that page, which consists of four pages of transcript, at page 190 of the transcript. But on page 191, Mr. McGuire looks at his deposition and it says precisely that he thought he did have an application to rebuild the bridge pending. Even if he did, when he gets the letter in November 12th, and he's citizen, I mean, all right, so assume that he thought this was all that was necessary. And he gets a letter from the government and it says, we're encouraging you to apply for a permit to replace the current structure with one that meets our design and safety requirements. And then it cites a rag. I mean, there's no way he could have thought that his submission early on met design and safety requirements. There was no reference to those requirements. So why, even if he thought he had done enough early on after receipt of this letter, would he not have been on notice that they want more? Because, Your Honor, he had been told to meet with the engineer. That was the only official who was a reference for him. He met with the engineer. On page 147 of the appendix, he described what he thought about the submission to these plans. When was that meeting? The record does not disclose the date. But we're assuming it happened before November 12th. I don't think that's a fair assumption. Why isn't that a fair assumption where he says, and did you submit any other plans to the BIA in writing after receipt of the November 1999 letter? Because, Your Honor, he goes on to say, on the next page, that referred to his deposition on page 191, that he thought he had a sufficient plan pending, and he confirms that at A147 of the record. And this is the form, Exhibit 46. This is all of the safety and sufficiency information that the subsequent tenant submitted, quote, installed. Where is that? That's Exhibit 46, Defendant's Exhibit 46. I'm sorry, it's the U.S. portion, page 485 of the Bates numbers, Defendant's Exhibit 46. Install two 8-foot concrete pipes with headwalls and pipe cover. That's it. That is the sum total. Now, Your Honor, that... Where does he say that he thought he had an application pending? On page 147 of the appendix, he says that. Where? He says it at page 215 of the trial record, at lines 1 through 24, and particularly at lines 19 through 24. The thing is... Wait, but in his letter, did it take it up with Mr. Hickens? I took it up with Mr. Hickens. And, Your Honor, what he... But that apparently happened before the November 11th, right? I don't know that. I don't think so. And I don't think the government gets the benefit of assuming that happened. It happened that way. And here's why. Your Honor, I can only offer you this much. And then I am exhausted at what I can offer. If it isn't sufficient, it's the best I have. And what I have is this. This canal is crossed by two bridge designs. Not 20, not 30, not three, two. One of them consists of concrete pipes, eight feet long, that are faced with a concrete header against the downstream flow. That's what the subsequent tenant put in. That's what Mr. McGuire took in. Photographs, as shown on page 147 of the appendix, proposing to build. He says that about Hickens, too. That's what he drew. There was no form. But you don't... Your Honor, there was also no file in which... Can I ask you a question? You just referred us to... What's the form? You just referred us to Defendant's Exhibit 46. What you say is, this seems to be the grant of the permit. This is a permit that is issued. That's signed by Mr. Al-Qaeda, who got the permit. Ray Al-Qaeda. But is this necessarily... This doesn't represent what he submitted in order to get the permit. Yes, it does. Now, I'm not able at this instant to tell you where in the record, but I can tell you there's absolutely no dispute about that. No dispute about the fact that that is the application, the approval. That is the whole ball of wax. And it came into existence in 2002 because of this problem. And there has been one permit in this BI agency in the history of the agency. And it's that one, number 46. Mr. McGuire was not like the government permittees in the Hague Estate case that was brought to your attention recently. He was not a troublemaker. He was a good farmer. And he was trying to make his 10-year lease, which was half up, work. He didn't just go to court. He didn't just buck up his shoulders like a farmer might. He went to bankruptcy. His operation was taken away from him. He went broke. He was sold out because the unit costs of operating wouldn't work when his land was cut in half. Okay, I think we're out of time. Thank you very much. Thank you all, counsel. The case is submitted.